UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
FORT DEARBORN LIFE          : CASE NO. 1:08-cv-433
INSURANCE CO.,              :
                            :
       Plaintiff,           :
                            :
vs.                         : OPINION & ORDER
                            : [Resolving Doc. 1, 12].
MEDICAL MUTUAL OF           :
OHIO, *et. al.*,            :
                            :
       Defendants.          :
                            :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this opinion and order, the Court considers the Plaintiff's motion for a preliminary injunction. The Court has already held that the parties must submit to arbitration, but that it would still consider the preliminary injunction issue. [Doc. 29]. On April 16, 2008, the Court held a hearing on this question. For the reasons stated below, the Court **DENIES** the preliminary injunction.

**I. Background**

On October 21, 1997, Health Care Service Corp., the Plaintiff's parent company, entered into a stock purchase agreement with Medical Mutual of Ohio. [Doc. 1, Ex. A]. In that agreement, the Plaintiff's parent company, Health Care Service Corp, agreed to purchase all of the outstanding stock in Medical Life Insurance. The Stock Purchase Agreement incorporated another contract, the Distribution and Marketing Agreement, in which the Defendant Medical Mutual of Ohio agreed that it would be the exclusive distributor of the life insurance policies of the Plaintiff Fort Dearborn's

-1-

Case No. 1:08-cv-433
Gwin, J.

predecessor, Medical Life Insurance. [Doc. 14, Ex. B at 3].

>The Stock Purchase Agreement also contained a non-compete clause that states:

>(a) For a period ending at the later of (i) ten (10) years after the Closing Date [December 31, 1997] or (ii) on the termination of the Distribution and Marketing Agreement pursuant to the provisions of §§8.2(a)(ii) or 8.2(b) thereof, the Seller shall not, and shall not permit MedMutual or any of its or their respective Affiliates (collectively with the Seller, the "Seller Parties") to, engage, directly or indirectly, . . . in any Competing Business[.] For purposes of this Agreement, the term "Competing Business" shall mean writing lines of insurance substantially similar or identical to the lines of insurance written by MedLife and the MedLife Subsidiaries prior to the Closing Date, except for such engagement in accordance with the Distribution and Marketing Agreement.

>(b) For a period ending ten (10) years after the Closing Date, the Seller shall not, and shall not permit any of the other Seller Parties to, directly or indirectly, solicit the insurance business of any Person holding a policy written by MedLife or any of the MedLife Subsidiaries on or before the Closing Date; provided, however, the foregoing prohibition shall not apply to solicitation in accordance with the Distribution and Marketing Agreement.

>(c) In the event the Distribution and Marketing Agreement is terminated:

>(i) pursuant to §8.2 (other than pursuant to §8.2(b)(ii)) thereof, MedMutual will not attempt to transfer business placed by MedMutual, MMLIA or any Affiliate of MedMutual with MedLife after the Closing Date to a new insurer for a period of three years.

>(ii) pursuant to §8.3 or 8.2(b)(ii), MedMutual will not attempt to transfer business placed by MedMutual, MMLIA or any Affiliate of MedMutual with MedLife after the Closing Date to a new insured for a period of five years.

[Doc. 1, Ex. A at 46].

The Plaintiff Fort Dearborn Life terminated the Distribution and Marketing Agreement through a letter dated March 13, 2006, invoking 8.2(b)(ii). [Doc. 1, Ex. C]. That provision allowed MedLife (now Fort Dearborn) to terminate the agreement immediately if MedMutual's affiliate Medical Mutual Life Insurance Agency failed to produce $2,000,000 of MedLife net premiums during

Case No. 1:08-cv-433
Gwin, J.

an annual period. [Doc. 1, Ex. B at 18] Therefore, the Distribution and Marketing Agreement ended on that date, March 13, 2006.

Under the terms of the contract, the Plaintiff Fort Dearborn Life acknowledges that the Defendant Medical Mutual of Ohio may generally compete with them as of January 2008 and the provisions in 5.17(a) and (b) of the Stock Purchase Agreement are no longer in force. The Plaintiff argues, however, that the Defendant Medical Mutual of Ohio and its affiliates have violated 5.17(c) of the Stock Purchase Agreement by attempting to transfer business that they had placed with the Plaintiff to a new insurer before the requisite five years have elapsed.

At hearing, the Plaintiff offered evidence that the Defendant Medical Mutual has sent letters to the business with whom the Defendant Medical Mutual had placed the Plaintiff's life insurance business and that these letters have offered other life insurance. [Exs. 7-9]. The Plaintiff argues that this is an attempt to transfer business that the Defendant placed with it to a third party and that this ongoing attempt to transfer business will cause them irreparable harm. To show the harm, the Plaintiff introduced evidence of businesses either terminating their policies or failing to pay premiums and presented testimony about potential losses in customer goodwill. [Ex. 13, 15].

## II. Legal Standard

In determining whether to grant a preliminary injunction pending arbitration, the Court must consider the same four factors as in any preliminary injunction determination. *Performance Unlimited*, 52 F.3d at 1380. These four factors are: (1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served. *Id.* "These factors are not prerequisites that must be met, but are interrelated considerations that must be

-3-

Case No. 1:08-cv-433
Gwin, J.

balanced together." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991). A finding that there is no likelihood of success on the merits, however, is usually fatal. *Gonzales v. National Bd. of Med. Examiners,* 225 F.3d 620, 625 (6th Cir. 2000).

Whether to grant injunctive relief is within the sound discretion of the trial court. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 532 (6th Cir. 2004); *Deck v. City of Toledo,* 29 F. Supp. 2d 431, 432 (N.D. Ohio 1998) (*citing Virginia Ry. Co. v. Sys. Fed'n, R.E.D.*, 300 U.S. 515, 551 (1937)). A preliminary injunction is an "extraordinary remedy" the Court will only grant one "if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't.,* 305 F.3d 566, 573 (6th Cir. 2002).

### III. Analysis

The Court finds that all each of the four factors weighs against granting a preliminary injunction in this case.

*A. A "Strong" Likelihood of Success on the Merits*

To show a strong likelihood of success on the merits, "a plaintiff must show more than a mere possibility of success." *Six Clinics Holding Corp., II v. CAFCOMP Systems*, 119 F.3d 393, 402 (6th Cir. 1997). In this case, the Plaintiff has not carried this burden.

The Plaintiff argues that the letters that the Defendant has sent to its health insurance customers offering them life insurance demonstrate an attempt to transfer business placed by MedMutual. The Defendant argues that it is merely competing with the Plaintiff. The Court agrees that these letters show nothing more than competition.

As an initial matter, the Court finds the plain language of the contract does not favor the Plaintiff's interpretation. The non-compete clause at issue prohibits attempts to transfer business.

-4-

Case No. 1:08-cv-433
Gwin, J.

The Court defines transfer as to convey or remove. *See www.dictionary.com*. Conveyance suggests that the transferor would have some ability to exert control over the thing that is transferred. When the parties entered this contract, the Defendant controlled all of the billing for the Plaintiff's plans. Thus, until 2006, the Defendant could have taken an individual's policy premiums and paid into a different plan. This ability to take an individual's business and place it with another company would have been an attempt to transfer business. However, in 2006, the Plaintiff took all this billing and maintenance of customer filed in-house. While the Defendant knows who purchases health insurance from itself, it has no current information on who purchases life insurance from the Plaintiff. In this case, however, the Defendant has merely solicited business from a number of customers, some of whom have existing policies with the Plaintiff, Fort Dearborn.

The contract has more than one non-compete clause, and the other non-compete clauses shed light on the meaning of in 5.17(c). Until 2008, Section 5.17(b) prohibited the Defendant Medical Mutual from soliciting, directly or indirectly, insurance business of any person holding a policy with MedLife (now Fort Dearborn). This clause prevented the Defendant from sending solicitation letters during the ten years following December 31, 1997. By contrast, 5.17(c), which survives longer than December 31, 2007, has none of this language. The broader prohibition language of the 5.17(b) clause is no longer in effect. Nevertheless, it demonstrates that the parties knew how to prohibit the solicitation of Fort Dearborn's clients when they had mutually agreed upon such a prohibition.

The Plaintiff argued that "attempts to transfer" business was a broader term and that solicitations would fall within the definition. The Plaintiff can make that argument to the arbitrator, but the Court does not find this argument adequate to establish a *strong* likelihood of success. The Court finds the plain meaning of the word transfer cuts against the Plaintiff's arguments and the

-5-

Case No. 1:08-cv-433
Gwin, J.

Plaintiff has the burden to establish a strong likelihood of success, not just a possibility of success. The Court, therefore, finds this factor does not weigh in the Plaintiff's favor.

*B. Irreparable Injury*

The Court further does not find that the Plaintiff has established that it would suffer an irreparable injury without an injunction. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). The Plaintiff argues that the damages would be difficult to calculate and that it also has experienced a loss in goodwill with its customers. The Court finds the Plaintiff has not met its burden on either argument. For one thing, it would be quite easy to calculate the damages in this case. Each policy holder who terminated the policy early, deciding to purchase Medical Mutual's life insurance is easily identifiable. Moreover, the policy premiums are ascertainable. Mr. Gauthier testified that he instructed his staff to do this for the customers they had lost to date, and his staff had given him the lost revenue calculation that day. [Tr. at 94-96].

The Court also finds the concerns over consumer goodwill less persuasive in this case, as the consumers all acted through insurance agents or brokers, who had fiduciary duties to the consumers. [Tr. at 44-46]. These consumers typically only purchase insurance for a year at a time, had a high turn-over rate, and only acted through intermediary brokers. [Tr. at 70, 122-23]. Moreover, the Defendant only sent them letters offering different life insurance and billing them for the additional life insurance if they did not respond.[1] This is not an action that would cause the consumers to lose their goodwill for their current life insurance policy.

---

[1] If anything, this may cause the Defendant Medical Mutual to lose its own customers' goodwill.

Case No. 1:08-cv-433
Gwin, J.

The Plaintiff argues that this action caused their consumers confusion and this confusion resulted in a loss of goodwill. The Court finds this equally unpersuasive. All of these consumers work each year to find life insurance through a broker. They could have simply called their broker to ask about the solicitation.

Finally, the Court notes that this is not a case where the Defendant used any of the Plaintiff's trade secrets or client lists. The Defendant sent the solicitation to all of its health insurance customers. While the Defendant had sold its health insurance to many of the same people the Plaintiff had sold its life insurance, the Defendant did not have the Plaintiff's client lists after 2006. With the high, approximately 20 percent, turnover rate among this client base, the Court finds it quite likely that the Defendant did not know which of its customers had life insurance with Fort Dearborn.

For these reasons, the Court concludes that the Plaintiff Fort Dearborn has failed to establish that it will suffer an irreparable injury in the absence of an injunction.

*C. Potential Harm to Others*

The Court finds that a preliminary injunction would cause the Defendant harm, if the Defendant ultimately wins this case. The Defendant has just entered the marketplace as a life insurer, and to prohibit it from pursuing customers at this time would be harmful.

*D. The Public Interest*

Finally, the Court finds that the issuance of a preliminary injunction would not serve the public interest. A preliminary injunction in this case would prevent the Defendant from competing with the Plaintiff in selling life insurance policies. The public is more served by the increase in competition. The Plaintiff has raised issues that the Defendant may be tying their life insurance policies to their health insurance policies, which may be anti-competitive, but that is not related to the reasons the

Case No. 1:08-cv-433
Gwin, J.

Plaintiff asks for a preliminary injunction in this case. Therefore, the Court will not go into those arguments.

*E. Status Quo*

Finally, the Court notes that it only has jurisdiction to consider this preliminary injunction insofar as entering it would preserve the status quo to ensure that any arbitral award could adequately compensate the parties. See *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1380 (6th Cir. 1995). The Court has found that the Plaintiff has failed to carry its burden as to irreparable harm, and any injury in this case can be properly compensated with legal damages. For this reason, the Court will dismiss the case.

### IV. Conclusion

For the reasons stated above, the Court **DENIES** the preliminary injunction, and **DISMISSES** the case.

IT IS SO ORDERED.


Dated: April 24, 2008                    *s/    James S. Gwin*
                                         JAMES S. GWIN
                                         UNITED STATES DISTRICT JUDGE